OPINION
The State of Ohio appeals from the determination of the trial court that appellee, Gregory Gimbrone was not a sexual predator.
Gimbrone was convicted in Montgomery County Common Pleas Court pursuant to his guilty plea of rape in violation of R.C.2907.02(A)(2). The victim of the rape was Constance Redfern, the defendant's step-daughter. The defendant was sentenced to an indefinite term of imprisonment of 8-25 years and at the same time he was classified by the trial court as a "sexually oriented offender."
Prior to sentencing, the defendant was referred to the probation department for a pre-sentence report. The report includes a "police summary" of the facts surrounding the rape conviction:
 On March 8, 1999, Constance M. Redfern, a white female, 16 years of age, reported to the Kettering Police Department and advised that from the time she was five years of age up until 13, she was Sodomized and forced to have oral sex performed on her by her step-father, Gregory John Gimbrone, a white male, 37 years of age. She advised that the abuse would take place while her mother was at work, and that he would perform oral sex on her regularly, two to three times per week. She also advised that on one or two occasions, she was forced to masturbate him, and that on one or two other occasions, he would masturbate in front of her. She also advised that he never asked for vaginal sex, but that sodomy was always forced upon her. She also stated that the oral sex continued up until the time she was 15 years of age.
 On March 9, 1999, Gregory John Gimbrone reported to the Kettering Police Department where he was interviewed in regards to the above allegations. During the course of the interview, Mr. Gimbrone would admit to only having oral sex with his step-daughter on one occasion. He denied all of the other allegations. He went on to state that the one time that he did perform oral sex on his step-daughter, she was the one who asked him to perform it on her. He also stated that he believes she is telling the story, just to fuel the fire regarding the divorce between he and his ex-wife. After providing the interview, Mr. Gimbrone was allowed to leave, pending a further investigation.
Dr. Kim Stookey, a clinical psychologist, testified that she interviewed the defendant for the purposes of sex offender classification. She stated she also reviewed court documents, police investigative reports, and a comprehensive profile by psychologist, Dennis O'Grady. Dr. Stookey concluded the following in her report to the trial court:
 In summary, Mr. Gimbrone appears to be most appropriately classified as a rape type offender, who, as a general class of offender, tend to recidivate at high rates. In addition, his risk is increased by his prior criminal record, his apparent willingness to offend against a wide range of age girls, and the chronicity of his offending. His risk is also increased by his history of substance abuse, his history of violence, his marital status, his history of employment instability, and his history of impulsive behavior.
In considering the factors enumerated in R.C. 2950.09(B) Dr. Stookey noted the following:
 1) The offender's age. An offender's age has been scientifically demonstrated to predict recidivism for sexual offending with offenders under the age of 30 at highest risk and a gradual tapering off of risk after age 30. Mr. Gimbrone is currently age 37 so his risk for reoffending is not increased by this factor.
 2) The offender's prior criminal record regarding all offenses, including but not limited to, all sexual offenses. Having a prior criminal record has been scientifically demonstrated to be a strong predictor of sexual reoffending. A criminal record which includes a prior sexual offense significantly increases this risk. Mr. Gimbrone has a prior criminal record so his risk for reoffending is increased by this risk.
 3) The age of the victim of the sexually oriented offense for which sentence is to be imposed. The age of the victim of a sexual offense has not been scientifically demonstrated to predict recidivism except in cases with multiple victims of differing age categories. Even though Mr. Gimbrone has only one victim, his willingness to offend against her between the ages of 6 and 13 suggests a willingness to offend against a range of age groupings. As such, his risk does appear to be increased by this factor.
 4) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims. The presence of multiple victims, in and of itself, has not been scientifically demonstrated to predict sexual recidivism. As noted above, Mr. Gimbrone has only one known victim.
 5) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting. The use of drugs or alcohol by the offender to impair a victim has not been scientifically demonstrated to predict recidivism for sexual offending. There is no evidence Mr. Gimbrone supplied or compelled the use of chemical substances by his victim.
 6) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders. Serving a prior sentence for an offense has not, in and of itself, been directly associated with a risk for recidivism. Scientific research has demonstrated participation in an appropriate sex offender treatment programs does reduce risk for reoffending in some cases. Mr. Gimbrone has complete by previous sentences for criminal offenses but he has no prior sexual offenses. He has not participated in sex offender specific treatment. His prognosis for successful treatment is guarded in light of his previous treatment failures and his apparent psychological disorder and personality structure which includes immaturity and an inability to trust others and establish and maintain close relationships.
 7) Any mental illness or mental disability of the offender. The presence of mental illness or disability in the offender has not been directly linked to sexual reoffending, however, in some cases it may be contributing factor.
 Although Mr. Gimbrone has likely been appropriately diagnosed with PTSD, this disorder does not appear to be closely linked to his sexual offending and does not increase his risk. The presence of such a disorder, however, is likely to make treatment more complicated and diminishes limits of progress for success.
 8) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse. Scientific research has associated the chronicity and pattern of offending with an increased risk for recidivism. Based on his victim's report, Mr. Gimbrone does appear to be a chronic offender which places him at increased risk for future offending.
 9) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty. The display of excessive cruelty during the commission of a sexually oriented offense is predictive of recidivism. Although a use of force was reportedly used against his victim, it does not appear this force was excessive. As such, this factor does not appear to a significant increase Mr. Gimbrone's risk for reoffending.
 10) Any additional behavioral characteristic that contribute to the offender's conduct. Scientific research has identified several other factors which are associated with an increased risk for sexual offending. Those present and relevant in the current case are his history of substance abuse, a history of violence, his marital status as single, a history of employment instability, and a history of impulsive behavior.
Dr. Dennis O'Grady, a clinical psychologist, testified he interviewed Mr. Gimbrone on twelve separate occasions. Dr. O'Grady submitted a written report of his psychological findings to Mr. Gimbrone's counsel and it was submitted as an exhibit at the sexual predator hearing. (Court's Ex. 2).
O'Grady stated it was his opinion that Mr. Gimbrone suffers from post-traumatic stress disorder (PTSD), and it is his strong opinion that he doesn't fit the ordinary profile of a sex offender or sexual predator. O'Grady stated in his report that Gimbrone is not psychologically impaired, a pedophile, or a sociopathic deviate. O'Grady noted that Gimbrone admits to and feels guilty about one episode of gross sexual imposition with his stepdaughter, Constance.
Michael Hurt testified he completed the House Bill 180 Screening Instrument and found six positive factors in favor of sexual predator classifications. He noted that the defendant had a prior criminal record, the victim of the offense was under 18 years of age, the defendant suffered from a mental illness, the sexual conduct was part of a pattern of abuse, the offense of rape denoted cruelty, and his risk to reoffend was increased by substance abuse issues, his divorced status, his history of impulsive behavior, history of violence, and his unstable work history. Based on these factors, Hurt recommended that the defendant be designated as a sexual predator.
In finding that the State had failed to demonstrate that the defendant is a sexual predator the trial court made the following observations:
 The legislature has set forth a number of criteria which the legislature deemed important in making this determination, and, as I have heard from the bench, not only in this particular case but in other cases, that they — that the psychologists may consider some of that criteria to not be relevant, but we'll follow the criteria of the legislature plus the catchall which is known as the other factors, or subsection j.; and I'll review all that in its entirety.
 Dr. Stookey has indicated here, as far as recidivism is concerned, as a general comment that with sexual crimes and particularly those involving force — of which rape is one of them — that the recidivism rates by scientific research indicate more likely than not recidivism.
 Moving to the legislative criteria, the Court finds that based upon the testimony, the age of the defendant in this case is not terribly relevant, and if — and because he's over the age of 30, and 37, that he's less likely than more likely to recidivate.
 The Court further finds that regarding the criteria as to the defendant's prior criminal record, that in fact he does have a prior criminal record. It is noted, however, there's no sexual offenses, there are some offenses of violence, and that that would indicate a recidivism rate that would be more likely than not to indicate recidivism. It should be noted, however, that the defendant's criminal record for the last eight or nine years has been nonexistent. This was all prior to 1990 or 1991.
 The age of the victim. We heard testimony here today that age alone is not determinative of recidivism. However, Dr. Stookey indicated that the fact that there was a willingness to offend a victim of somewhere between six and thirteen years old would show a possibility of multiple victims of differing age categories, which if it falls into that, it increases the risk. However, the Court is caught on the horns of a dilemma here. I have what lawyers term a classic "he said; she said." Understandably, this was — the plea in this case was a plea agreement, and this often happens in cases of this nature, cases which have such an impact not only on the victim, the defendant, and the families of both, to avoid the atmosphere and trauma that goes along with the criminal trial and in this particular case a step-daughter having to go through in court all of the allegations which she has raised. On the other hand, the defendant here says that it was only one act, it was a single act. This Court's not had the opportunity to see and hear each of those parties testify as to their respective positions. My job is to find by clear and convincing evidence the criteria and the ultimate finding in this case. I can't find by clear and convincing evidence that there were multiple rapes here. I can't find anything other than we know there's a single rape, because the defendant has entered a guilty plea to that charge. So I can't consider Dr. Stookey's assessment that if there's multiple rapes over a — from age six to thirteen, that it would show recidivism. I just can't do that. The evidence is not there. Therefore, I must rely on in this criteria with age alone, and the testimony is that's not determinative of recidivism one way or another.
 Moving to the area of multiple victim, it's not applicable in this case. There's some — There's some thought that had I been able to consider the fact that there were multiple rapes over a long period of time that I might be able to consider that, but as I've indicated before, I can't do that.
* * * *
 The next criteria, "demonstrated pattern of abuse." I've told you why I can't make a finding that there is a demonstrated pattern of abuse, because I can't take the victim's word or the defendant's word. I don't — I simply don't know.
 The Court agrees with Dr. Stookey on the criteria of cruelty. We all realize rape is a cruel crime, that it does involve force, whether that be implied or actual force, but I have to agree with Dr. Stookey that the criteria set forth in the legislative criteria, it talks about cruelty, and she interprets it as being more than is necessary to commit the crime. I have to agree with her that that's my interpretation.
 She talks about — additional characteristics. She talks about a history of substance abuse. The Court does note, however, that it seems to be undisputed that while there was a history of substance abuse, the defendant appears to have conquered it at this time.
 She talks about a history of violence, and the Court has some knowledge that's present. There have been some domestic violence cases in the past, and, as the Court would note, those were sometime ago, but they are still present here.
 She talks about marital status and employment instability, and, of course, the Court has to balance the employment instability with the fact that the defendant — because of his disability, that may have contributed somewhat to that employment instability.
 Marital status. The Court will accept Dr. Stookey's indication that that indicates some risk, but in the Court's opinion I'm not sure that's terribly significant.
 So what criteria do we have here? Well, there's evidence-at least there's allegations — there's a criteria that show — Well, let me back up here. There's criteria that would be most persuasive of this Court, and that's the age range of the victims, the multiple victims, and the demonstrated pattern of abuse. These criteria would show to the Court in a stronger fashion that this defendant would be more likely than not to commit a sexual offense in the future, but I can't — I am unable to use that criteria for the reasons I have said.
 What's left? Well, the prior criminal record and which the Court indicated there were crimes of violence, nothing in the last eight or nine years, no prior sexual offenses. The fact that this is a rape case tends to show more likely than not a rate of recidivism, but if that was the only criteria, then the legislature would have indicated anybody convicted of a rape is a sexual predator. That's not what it says. The single status and the employment instability in this case are not significant to this Court and are certainly not significant enough to cause the Court to make a finding that there was a — that the defendant is a sexual predator.
 In conclusion, therefore, the Court finds that the State has failed to show by clear and convincing evidence that the defendant is more likely than not to commit a sexual offense in the future. This, however, is no guarantee that that will not occur. This is merely what the Court sees today as I sit here and what it has before it.
Appellant assigns the following as his assignment of error:
 THE TRIAL COURT ERRED IN DECIDING GREGORY GIMBRONE'S SEXUAL PREDATOR CLASSIFICATION WHEN IT REFUSED TO CONSIDER AS EVIDENCE THE MULTIPLE RAPES AND COUNTLESS INSTANCES OF SEXUAL ABUSE THAT OCCURRED DURING THE VICTIM'S CHILDHOOD.
In this assignment, the State argues that the trial court failed to consider the "police summary" contained in the presentence investigation report wherein Constance Redfern alleged she was sexually abused by the defendant over a number of years.
The record is not entirely clear that the trial court refused to consider the presentence report. The trial court could not have been unaware of the Ohio Supreme Court's holding in State v.Cook (1998), 83 Ohio St.3d 404, 424, that reliable hearsay, such as a presentence report, may be relied upon the trial judge in making the sexual predator determination.
The trial court may have believed in this case that the allegations contained in the presentence report, unsupported by other evidence, were simply insufficient to convince it by clear and convincing evidence that the defendant committed the other abusive conduct alleged. Accordingly, the first assignment must be overruled. The judgment of the trial court is Affirmed.
 ___________________________ BROGAN, J.
GRADY, P.J., and WOLFF, J., concur.